IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RONALD NORMAN STATON,**

      **Plaintiff,**

      **vs.**                              **Civ. No. 21-931  JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record

(Doc. 15)[2] filed December 29, 2021, in connection with Plaintiff's *Motion to Reverse or Remand*

*for Payment of Benefits, Or in the Alternative, For Rehearing, With Supporting Memorandum,*

filed May 18, 2022.  Doc. 28.  Defendant filed a Response on July 19, 2022.  Doc. 30.  Plaintiff

filed a Reply on August 2, 2022.  Doc. 31.  The Court has jurisdiction to review the

Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously

reviewed the entire record and the applicable law and being fully advised in the premises, the

Court finds that Plaintiff's motion is well taken and is **GRANTED**.  The Commissioner's final

decision is reversed and this case is remanded for additional proceedings.

## I.  Background and Procedural Record

Plaintiff Ronald Norman Staton (Mr. Staton) alleges that he became disabled on

January 8, 2011, at the age of thirty-seven years and four months, because of "arthritis – causes

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 25, 26, 27.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 15), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

bulge in back/herniated disc." Tr. 211, 236.  Mr. Staton completed two years of college in 2005

and completed welder training in 2005.  Tr. 219-20.  Mr. Staton worked as a dishwasher/busboy,

construction laborer, retail sales assistant, elevator repairman, and home health care provider.

Tr. 216, 222, 237, 252-62.  Mr. Staton stopped working on January 8, 2011, due to his

conditions.  Tr. 236.  Mr. Staton's date of last insured is December 31, 2015.[3]  Tr. 1787.

Therefore, to receive disability insurance benefits, Mr. Staton must show he was disabled prior to

that date.  *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

On May 23, 2011, Mr. Staton protectively filed an application for Social Security

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42

U.S.C. § 401 *et seq*. and for Supplemental Security Income ("SSI") under Title XVI of the Act,

42 U.S.C. § 1381 *et seq*.  Tr. 173-82, 183-89.  On August 19, 2011, Mr. Staton's applications

were denied.  Tr. 44, 45, 46-54, 55-63, 102-05, 106-09.  They were denied again at

reconsideration on July 20, 2012. Tr. 64, 65, 66-79, 80-93, 119-21, 122-25.  Upon Mr. Staton's

request, Administrative Law Judge (ALJ) Myriam C. Fernandez Rice held a hearing on

February 14, 2013.  Tr. 140-95.  Mr. Staton appeared with attorney representative Daniel Reyes.[4]

*Id*.  On April 26, 2013, ALJ Rice issued an unfavorable decision.  Tr. 7-22.  On December 1,

2014, the Appeals Council issued its decision denying Mr. Staton's request for review and

upholding the ALJ's final decision.  Tr. 1-4.  On January 19, 2015, Mr. Staton timely filed a

Complaint.  USDC NM Civ. No. 15-52 LH/SMV.

---

[3] To qualify for DIB, a claimant must establish that he met the statutory requirements for disability on or before her date of last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[4] Mr. Staton is represented in these proceedings by Attorney Amber L. Dengler.  Doc. 1.

On January 13, 2016, District Judge C. Leroy Hansen entered an Order Granting Motion for Voluntary Remand.  Tr. 672-73.  Therein, the Court ordered that the ALJ would, *inter alia*, reevaluate the opinion evidence from Atta Rehman, M.D., and Albert Colburn, P.A.  *Id.*  On March 3, 2016, the Appeals Council entered its Order Remanding Case to Administrative Law Judge.  Tr. 667-71.

On August 4, 2016, ALJ Michelle K. Lindsay held a second administrative hearing. Tr. 639-64.  Mr. Staton appeared with attorney representative Sofia McDermott.[5]  On December 8, 2016, ALJ Lindsay issued an unfavorable decision.  Tr. 613-26.  On April 18, 2018, the Appeals Council issued its decision denying Mr. Staton's request for review and upholding the ALJ's final decision.  Tr. 634-37.  On June 13, 2018, Mr. Staton timely filed a Complaint. USDC NM Civ. No. 18-550  CG.

On December 20, 2018, Mr. Staton filed his *Motion to Reverse and Remand* and argued therein that ALJ Lindsay erroneously rejected the medical opinions of his treating physicians Albert Colburn, P.A., Atta Rehman, M.D., and Michael Frederich, M.D.  Tr. 1084.  On March 13, 2019, Magistrate Judge Carmen Garza, Presiding by Consent, issued a Memorandum Opinion and Order agreeing that ALJ Lindsay erred in her rejection of those opinions and remanding for further proceedings.  Tr. 1083-1103.  Judge Garza explained her findings in pertinent part as follows:

> . . .  ALJ Lindsay rejected several of the physicians' assigned limitations and did not proffer an opposing opinion.  Rather, she parsed through Mr. Staton's medical records and prior treatment notes, opining that the physicians' prescribed limitations do not match their previous diagnoses and findings.  [] The Court is not satisfied that ALJ Lindsay's analysis is anything more than her mere speculation, an attempt to craft the imaging studies and physical examinations to satisfy her finding of nondisability.

---

[5] *Id.*

. . .

> Compounding ALJ Lindsay's error is the fact that after she afforded Mr. Staton's treating physicians' opinions "little weight," she does not explain how she arrives at the final RFC assessment.  []  While relying on seemingly no other physician's opinion, she selects some of the limitations assessed by Mr. Staton's treating physicians but then excludes others without explanation.  ALJ Lindsay cannot pick and choose which limitations to include in the final RFC assessment without explaining why she found those particular limitations relevant but not the remainder of the physicians' prescribed limitations.  []

Tr. 1096-97.

On November 14, 2019, ALJ Lindsay held a third administrative hearing.  Tr. 1003-35. On March 17, 2020, ALJ Lindsay issued an unfavorable decision.  Tr. 973-93.  On July 26, 201, the Appeals Council issued its decision denying Mr. Staton's request for review and upholding the ALJ's final decision.  Tr. 963-69.  On September 22, 2021, Mr. Staton timely filed the Complaint presently before the Court.

## II.  Applicable Law

### A.  Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

4

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[6] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.

*Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987).

---

[6] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

> **B.** <u>**Standard of Review**</u>

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

### III. Analysis

The ALJ made her decision that Mr. Staton was not disabled at step five of the sequential

evaluation.  Tr. 991-93.  The ALJ determined that Mr. Staton met the insured status requirements

of the Social Security Act through December 31, 2015, and that he had not engaged in

substantial gainful activity from his alleged onset date of January 8, 2011.  Tr. 978.  She found

that Mr. Staton had severe impairments of degenerative disc and joint disease of the lumbar

spine, degenerative joint disease of the thoracic spine, thoracic scoliosis, chronic pain syndrome,

major depressive disorder, anxiety disorder, and left rotator cuff strain.  Tr. 979.  The ALJ also

found that Mr. Staton had a nonsevere impairments of essential tremor, gastroesophageal reflux

disorder, and history of carcinoid tumor of the small bowel status post bowel resection.  *Id.*  The

ALJ determined, however, that Mr. Staton's impairments did not meet or equal in severity any of

the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr.

979-82.  Accordingly, the ALJ proceeded to step four and found that Mr. Staton had the residual

functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is
> able to lift, carry, push, and pull twenty pounds occasionally and ten pounds
> frequently, sit for at least six hours in an eight-hour workday, and stand and walk
> for six hours in an eight-hour workday.  He can occasionally reach overhead with
> the left, non-dominant upper extremity.  He can occasionally climb stairs and
> ramps, stoop, crouch, kneel, and crawl, but can never climb ladders, ropes, or
> scaffolds.  He must avoid more than occasional exposure to extreme cold and to
> vibration. He must completely avoid unprotected heights.  He is able to understand,
> remember, and carry out simple instructions, and is able to maintain attention and
> concentration to perform and persist at simple tasks for two hours at a time without
> requiring redirection to task.  He can have occasional contact with the general
> public and superficial interactions with co-workers and supervisors.  He requires
> work involving no more than occasional change in the routine work setting, and no
> more than occasional independent goal setting or planning.  He requires work that
> does not involve travel to unfamiliar places as part of the job.

Tr. 982.  The ALJ determined that Mr. Staton could not perform any of his past relevant work, but that considering Mr. Staton's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.[7]  Tr. 991-93.  The ALJ, therefore, concluded that Mr. Staton was not disabled.  *Id.*

In support of his Motion, Mr. Staton argues that (1) the ALJ's RFC is contrary to substantial opinion evidence from several sources detailing physical and mental limitations, and the ALJ failed to provide specific and legitimate reasons to discount the opinions and made an unsupported determination that symptoms and limitations were not supported by the evidence; and (2) that the ALJ failed to incorporate all limitations into the hypothetical question provided to the VE and failed to fulfill her step five burden regarding the reasoning level of jobs propounded.  Doc. 28 at 6-26.

For the reasons discussed below, the Court finds that the ALJ failed to apply the correct legal standards in evaluating Mr. Staton's treating source medical opinions and that her explanations for rejecting their opinions are not supported by substantial evidence.  For this reason, this case requires remand.

### A.   Medical Opinion Evidence Related To Mr. Staton's Ability To Do Work-Related Physical Activities

#### 1.   Albert Colburn, P.A.

On November 9, 2010, Mr. Staton presented as a new patient to Albert Colburn, P.A.  Tr. 400-06.  Mr. Staton reported back, neck and right/left arm pain.  *Id.*  He reported that his current

---

[7] The vocational expert testified that Mr. Staton would be able to perform the requirements of representative occupations such as a Marker, DOT #209.587-034, which is performed at the light exertional level with an SVP of 2 (233,000 jobs in national economy); a Router, DOT #222.587-038, which is performed at the light exertional level with an SVP of 2 (53,000 jobs in the national economy); a Routing Clerk, DOT #222.687-022, which is performed at the light exertional level with an SVP of 2 (39,000 jobs in the national economy).  Tr. 992.

medication was not helping.  *Id.*  On physical exam PA Colburn noted, *inter alia*, that

Mr. Staton's cervical spine had an abnormal appearance and showed tenderness on palpation of

the spinous and transverse processes.  *Id.*  PA Colburn obtained and reviewed radiologic studies

of the cervical, thoracic and lumbosacral spine which demonstrated mild thoracic dextroscoliosis

and lumbosacral spine narrowing of the disc space.  *Id.*  PA Colburn assessed localized

osteoarthritis of the neck, intervertebral disc degeneration, cervical disc degeneration, thoracic

disc degeneration, and lumbar disc degeneration. Tr. 404.  PA Colburn recommended decreased

physical activity and home exercises, and prescribed Feldene, Amitriptyline, Oxycodone and

analgesics.  *Id.*

On December 7, 2010, Mr. Staton returned to see PA Colburn for follow up.  Tr. 395-99.

On physical exam, PA Colburn noted abnormalities on palpation of the lumbosacral spine,

including tenderness and muscle spasms; that straight leg raising tests were positive; and that

pain was elicited with motion.  *Id.*  PA Colburn diagnosed herniated intervertebral disc and

lumbar radiculopathy S1 right/left and L5 right/left.  *Id.*  PA Colburn recommended home

exercises and prescribed Oxycodone.  *Id.*

On August 17, 2011, Mr. Staton saw PA Colburn for an "Adult Physical" and reported

that his low back pain was getting worse and was now radiating down his legs.  Tr. 485-91.  On

physical exam, PA Colburn noted scoliosis of the thoracolumbar spine, abnormalities on

palpation of the lumbosacral spine, and abnormal hip motion.[8]  *Id.*  PA Colburn obtained and

---

[8] On August 26, 2011, Mr. Staton saw Family Practitioner and Pathologist Alan Caroe, M.D., for the purpose of
confirming his history of scoliosis. Tr. 472.  On physical exam, Dr. Caroe noted "[t]horacic scoliosis, slight with right
concavity associated with slight left scapular elevation when patient touches fingers to ankles."  *Id.*  Mr. Staton had
previously seen Dr. Caroe on July 12, 2011, and  June 20, 2011.  Tr. 468-71.   Treatment notes from the June 20, 2011,
visit are not in the Administrative Record.  Dr. Caroe noted on July 12, 2011, that Mr. Staton was in profound distress
from back pain and was unable to sit in wooden chair.  *Id.*  He noted that Mr. Staton sat in a molded plastic chair but
moved positions every ten minutes.  *Id.*  Dr. Caroe observed that Mr. Staton appeared five years older than his stated
age.  *Id.*  On physical exam, Dr. Caroe noted, *inter alia*, that Mr. Staton's station was abnormal, standing

reviewed radiologic studies of Mr. Staton's thoracic, thoracolumbar spine for scoliosis and lumbosacral spine for scoliosis. *Id.* PA Colburn diagnosed scoliosis and lumbar radiculopathy S1 right/left, L5 right/left and L4 right/left. *Id.* PA Colburn recommended reduced physical activity and prescribed Meloxicam. *Id.*

On August 31, 2011, Mr. Staton returned for follow up on laboratory and radiologic studies. Tr. 479-84. Mr. Staton reported he was in pain all of the time. *Id.* On physical exam, PA Colburn noted spasm of the thoracic spine paraspinal muscles; scoliosis in the thoracolumbar spine; abnormalities on palpation of the lumbosacral spine; abnormal hip pain; decreased response to tactile stimulation on the knee and medial leg; decreased response to tactile stimulation of the lateral leg and dorsum of the foot; abnormal gait and stance; and limping on the right. *Id.* PA Colburn noted that radiologic studies demonstrated narrowing of the thoracic spine disc space with projecting osteophytes and spondylolisthesis L5-S1.[9] *Id.* PA Colburn instructed Mr. Staton to stop physical activities and ordered an MRI thoracic spine and lumbar spine without contrast. *Id.*

On the same date, PA Colburn prepared a *Medical Source Statement of Ability To Do Work-Related Activities (Physical)* on Mr. Staton's behalf. Tr. 609-12. Therein, he assessed that

---

> with right shoulder twisted slightly forward and down, holding cane in right hand for stability. Barely able to stand upright on medical scale. Gait abnormal: lurching: right leg moves anteriorly and laterally while right hand holds cane for support. Left leg motion appears to be intact. Unable to perform toe or heel walking. Strength: Right hamstrings 3/5, unable to step up onto exam table using right leg. Left hamstrings strength: 4/5, able to step up onto exam table only with two person assistance. . . . Pain upon light pressure onto superior or posterior shoulder, bilateral. . . .

Tr. 468. Dr. Caroe assessed*, inter alia,* chronic pain, sciatica, and unspecified joint disorder of multiple sites, characterized by chronic pain in bilateral superior-posterior rotator cuff regions of both shoulders of unknown etiology.

[9] On August 23, 2011, Mr. Staton underwent radiologic studies of his thoracic and lumbar spine at The Imaging Center. Tr. 496-97. The thoracic spine, three views, demonstrates mild mid thoracic dextroscoliosis and mild osteophyte formation at T3-4. Tr. 496. The lumbar spine, three views, demonstrated negative lumbar spine. Tr. 497.

Mr. Staton was able to occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds;

stand/walk for less than two hours in an 8-hour workday; medically required a hand-held

assistive device for ambulation; could sit for less than six hours in an 8-hour workday; must

periodically alternate sitting and standing to relieve pain or discomfort; had limited ability to

push/pull with upper and lower extremities; could occasionally climb, balance, kneel, crouch;

could never crawl or stoop; had limited reach in all directions; and should have limited exposure

to cold, vibration, and hazardous workplace conditions such as heights.  *Id.*  By way of

explanation, PA Colburn indicated Mr. Staton had chronic back pain with degenerative joint

disease at L5-S1 with radiating pain; slight thoracic and lumbar scoliosis with pain; and

spondylosis arthritic changes T3-T4.  *Id.*  PA Colburn explained that Mr. Staton experienced

pain with any extended use of his upper arms.  *Id.*

Mr. Staton saw PA Colburn last on September 14, 2011, to review MRI results.[10]  Doc.

474-78.  Mr. Staton reported no change in his pain.  *Id.*  On physical exam, PA Colburn noted

scoliosis in the thoracolumbar spine; abnormalities on palpation of the lumbosacral spine;

abnormal hip pain; decreased response to tactile stimulation on the knee and medial leg;

decreased response to tactile stimulation of the lateral leg and dorsum of the foot; and decreased

response to tactile stimulation on the sole of the foot and posterior leg.  *Id.*  PA Colburn

instructed Mr. Staton on reduced physical activities and weightbearing parameters; provided

education on orthopedic activities, back care, extremity range of motion, and extremity

strengthening exercises; and prescribed Oxycodone.  *Id.*

---

[10] On September 8, 2011, Mr. Staton underwent noncontrast MRI studies of his thoracic and lumbar spine at The Imaging Center.  Tr. 494-95.  The MRI of the thoracic spine was unremarkable.  Tr. 494.  The MRI of the lumbar spine demonstrated a "subtle 2 mm disc bulge at L4-5 level without evidence of canal stenosis or nerve root impingement.  The rest of the survey is unremarkable."  Tr. 495.

11

2.    **Michael Frederich, M.D.**

On January 20, 2012, Mr. Staton presented to Family Practitioner Michael Frederich,

M.D., for refills on his pain and heartburn medications.  Tr. 511-12.  Dr. Frederich's notes

indicate that Mr. Staton had chronic back pain, well controlled with Oxycodone 30 mg. TID;

neck is often stiff but not as painful; and positive straight leg raising tests bilaterally.  *Id.*

Dr. Frederich also noted that the September 2011 MRI showed L5-S1 disc bulge without

herniation and normal thoracic vertebrae.  *Id.*  Dr. Frederich assessed backache and chronic pain

and refilled Mr. Staton's Oxycodone prescription.  *Id.*

On February 20, 2012, Mr. Staton saw Dr. Frederich for a follow up on health.  Tr. 513-

15.  Dr. Frederich noted that Mr. Staton's ongoing low back pain was still relieved with

Oxycodone and that Mr. Staton was making an appointment to see Dr. Lichota about possible

injections.  *Id.*  Dr. Frederich noted under "Social History" that Mr. Staton had "[g]ood exercise

habits" and "[n]o physical disability and activities of daily living were normal."  *Id.*  On physical

exam, Dr. Frederich indicated lower back exhibited tenderness on palpation of the right side

paraspinal region.  *Id.*  Dr. Frederich assessed backache and refilled Mr. Staton's Oxycodone

prescription.  *Id.*

Mr. Staton next saw Dr. Frederich on September 12, 2012, for follow up on medications.

Tr. 534-36.  Dr. Frederich noted that Mr. Staton had ongoing back pain, that Mr. Staton had seen

Dr. Davis who prescribed a back brace and physical therapy,[11] that Mr. Staton was unable to see

---

[11] On August 14, 2012, Mr. Staton saw orthopaedic surgeon Alan C. Davis, M.D.  Tr. 594-96.  Dr. Davis noted that
Mr. Staton reported chronic low back pain from a work-related injury.  Tr. 596.  On physical exam, Dr. Davis noted
that Mr. Staton showed

> tenderness over the spinous process of L4-S1 with only mild paravertebral muscle spasm to the
> lumbar area that does not radiate up to the thoracic level.  Patient is able to bend forward and lacks
> 4 inches from touching toes, hyperextend 20-degrees and lateral flex to the left and right 15-degrees.
> In a sitting position, patient shows negative straight leg raising to 90-degrees with knee and ankle
> reflexes 2+ and 1+ with respect to the lower extremities.  No motor or sensory deficit noted.  Patient

Dr. Lichota because she was no longer taking Medicaid, and that Mr. Staton required Oxycodone

for pain relief.  Tr. 534.  On physical exam Dr. Frederich noted tenderness on palpation of the

right and left side.  Tr. 536.  Dr. Frederich assessed backache and chronic pain and prescribed

Oxycodone.  *Id.*

Mr. Staton continued to see Dr. Frederich for chronic back pain and primary care over the

next five years, seeing him on forty-six occasions.  580-83, 781-863, 951-60, 1241-63, 1299-

1302, 1327-29.  Dr. Frederich consistently diagnosed Mr. Staton with backache and/or chronic

pain and continued to prescribe prescribed Oxycodone for pain control.  *Id.*

On July 14, 2016, Dr. Frederich completed a *Medical Source Statement of Ability To Do*

*Work-Related Activities (Physical)* on Mr. Staton's behalf.  Tr. 945-48.  Dr. Frederich assessed

that in an eight-hour workday, Mr. Staton could occasionally lift/carry 10 pounds; could

frequently lift/carry less than 10 pounds; could stand and/or walk less than 2 hours in an 8-hour

workday; could sit less than about 6 hours in an 8-hour workday; had limited ability to push/pull

with the upper and lower extremities; could occasionally balance; could never climb, kneel,

crouch, crawl or stoop; was limited in reaching, fingering and feeling; and should have limited

exposure to extreme temperatures, humidity/wetness, and hazardous workplace conditions such

---

has good dorsiflexion of the big toe and ankle.  Patient ambulates with a cane and is using heat
occasionally.  He does not have a back brace.

Tr. 596.  Dr. Davis placed Mr. Staton on bed rest, heating pad, Mobic 15 mg., Vicodin, and lumbar corset.  *Id.*
Dr. David ordered an updated MRI of the lumbar spine.  *Id.*

Mr. Staton saw Dr. Davis again on October 20, 2012.  Tr. 594.  Mr. Staton reported his back was the same.  *Id.*  On
physical exam, Dr. Davis noted Mr. Staton was still showing some tenderness over the spinous process of L4-S1 with
no paravertebral muscle spasm.  *Id.*  Dr. Davis noted "[l]umbar DJD without encroachment with a positive M.R.I."
*Id.*  Dr. Davis changed medications and indicated he was hopeful Mr. Staton's back pain would quiet down with time.
*Id.*  Dr. Davis noted that Mr. Staton could proceed with epidural injections if not.  *Id.*  Dr. Davis provided Mr. Staton
with back exercises.  *Id.*

as machinery and heights.  *Id.*  Dr. Frederich explained that Mr. Staton had positive SLR on the

right, was limited to 90 degree lift above shoulder, and had no mobility without pain.  *Id.*

### 3.   Atta Rehman, M.D.

On January 31, 2013, Mr. Staton presented to Neurologist Atta Rehman, M.D., based on

a referral from Dr. Frederich.  Tr. 582, 601-603.  Mr. Staton complained of back pain associated

with leg pain, tingling and numbness, and hand tremors.  *Id.*  Mr. Staton reported a six-year

history of back pain, which was radiating to his right side with numbness and tingling.  *Id.*

Mr. Staton reported using a cane.  *Id.*  Mr. Staton also reported hand tremors, right more than

left.  *Id.*  On physical exam, Dr. Rehman indicated, *inter alia*, that Mr. Staton was using a cane as

an assistive device; had no ataxia or unsteadiness; had 5/5 muscle strength throughout; had

normal muscle bulk and tone; and had hand tremors.  Tr. 602.  Dr. Rehman diagnosed abnormal

involuntary movements, lumbago, and pain in limb.  *Id.*  Dr. Rehman prescribed Propranolol and

ordered an MRI (Brain),[12] a nerve conduction study, and laboratory studies.  Tr. 603.

Dr. Rehman provided Mr. Staton with back and neck pain exercises and indicated that Mr. Staton

would need pain management for his chronic back pain.  *Id.*

On February 4, 2013, Dr. Rehman completed a *Medical Source Statement of Ability To*

*Do Work-Related Activities (Physical)* on Mr. Staton's behalf Tr. 589-592.  Dr. Rehman assessed

that in an 8-hour workday, Mr. Staton could occasionally lift and/or carry less than 10 pounds;

could frequently lift and/or carry less than 10 pounds; could stand and/or walk less than 2 hours;

could sit less than about 6 hours; had limited ability to push and/or pull with upper and lower

extremities; could never climb, balance, kneel, crouch, crawl or stoop; had limited reaching in all

directions; and required limited exposure to temperature extremes, vibration, humidity/wetness,

---

[12] The MRI Brain was negative.  Tr. 604.

and workplace hazards such as machinery and heights.  *Id.*  Dr. Rehman explained that his

assessment was based on Mr. Staton's "medical condition" and "chronic back pain."  Tr. 590-91.

Dr. Rehman indicated  he was referring Mr. Staton for an EMG nerve conduction study, MRI

Brain, and bloodwork.  *Id.*  He noted that Mr. Staton complained of chronic back pain and

tremors to the upper extremities.  *Id.*  Last, Dr. Rehman indicated that extreme temperatures,

vibration and workplace hazards could trigger severe pain.  Tr. 592.

Mr. Staton saw Dr. Rehman once more on February 18, 2013.  Tr. 606-07.  Dr. Rehman

noted on physical exam, *inter alia*, that Mr. Staton was not using an assistive device, that he had

no ataxia or unsteadiness, and that muscle strength was "motor grossly nonfocal."  *Id.*

Dr. Rehman diagnosed abnormal involuntary movements and pain in limb, and noted that

Mr. Staton could not do the EMG nerve conduction study due to pain and had not yet started the

Propranolol.  *Id.*

### 4.  <u>Allen Gelinas, M.D.</u>

On August 29, 2011, nonexamining State agency medical consultant Allen Gelinas,

M.D., reviewed Mr. Staton's records at the initial stage of review.  Tr. 49-52, 58-61.  He

assessed that Mr. Staton was capable of light exertional work,[13] except for limitations to

occasional stooping, crouching and crawling, and limited exposure to vibration and workplace

hazards, due to herniated intervertebral disc.  *Id.*  Dr. Gelinas explained that lumbosacral imaging

demonstrated normal findings and thoracic spine imaging demonstrated mild dextroscoliosis

with vertebral body heights and disc spaces preserved and no destructive bone lesion noted.  *Id.*

He further explained that "[d]espite pain and back spasms, claimant's ADLs consist of caring for

children by preparing simple meals, sitting while folding laundry and/or watering the lawn and

---

[13] Light work involves lifting no more than 20 pounds at a time and 10 pounds frequently, and involves a good deal
of walking or standing.  20 C.F.R. §§ 404.1567(b) and 416.967(b).

putting dishes away.  Claimant drives, shops, read[s], watches television and goes fishing once every few months.  Socially, he attends bible study, cookouts and church.  . . . ."

### 5.   N. D. Nickerson, M.D.

On May 18, 2012, nonexamining State agency medical consultant N. D. Nickerson, M.D., reviewed the medical evidence record at reconsideration.  Tr. 72, 86.  Dr. Nickerson stated that "[t]he MER updated appears consistent with prior assessment and does not describe any significant change/decline in claimant's physical status/functioning.  It appears reasonable to affirm the prior RFC dated 8/19/2011 with this addendum."  *Id.*

### B.   Legal Standard

### 1.   RFC

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[14]  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R.

---

[14] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

§§ 404.1545(a)(2) and (3), 416.945(a)(2).  The ALJ must consider and address medical source opinions and give good reasons for the weight accorded to a treating physician's opinion.  20 C.F.R. §§ 404.1527(b), 416.927(b)[15]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

### 2.  Medical Opinion Evidence

The applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions.[16]  *See* 20 C.F.R. §§ 404.1527(c); *see also Hamlin,* 365 F.3d at 1215 ("[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.").  "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."  *Hamlin*, 365 F.3d at

---

[15] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.

[16] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017.  *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); (Doc. 19 at 4 n.3.).  However, because Mr. Staton filed his initial claim on March 23, 2011, the previous regulations for evaluating opinion evidence apply to this matter.  *See* 20 C.F.R. 416.927.

17

1215. (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[17]   An ALJ's decision need not expressly apply each of the six relevant factors in deciding what weight to give a medical opinion.  *Oldham v. Astrue*, 509 F3d. 1254, 1258 (10th Cir. 2007).  However, the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and reasons for that weight."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  The ALJ's decision for according weight to medical opinions must be supported by substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).  An ALJ is required to give controlling weight to the opinion of a treating physician if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Id.*  Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."  *Hamlin*, 365 F.3d at 1215.

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinion.  *Langley*, 373 F.3d at 1119 (citation omitted).  Failure to do so constitutes legal error.  *See Kerwin v. Astrue*, 244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished).  In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)

---

[17] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. § 404.1527(c)(2)-(6).

18

(citations omitted).  Instead, an ALJ "must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.  Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

The regulations also contemplate the use of information from "other sources," both medical[18] and non-medical,[19] "to show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.[20]  "Information from these 'other sources' cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source'[21] for this purpose." SSR 06-03p, 2006 WL 2329939, at *2.[22]  An ALJ is required to explain the weight given to opinions from other medical sources and non-medical sources who have seen a claimant in their professional capacity, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's

---

[18] For claims filed before March 27, 2017, other medical sources are defined as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapist.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[19] For claims filed before March 27, 2017, non-medical sources include, but are not limited to, educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers; public and private social welfare agency personnel, rehabilitation counselors; and spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.  SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[20] SSR 06-3p is rescinded for claims filed on or after March 27, 2017.  SSR 96-2p, 2017 WL 3928298, at *1.  For claims filed after March 27, 2017, all medical sources can make evidence that are categorized and considered as medical opinions.  *Id.* at *2.

[21] For claimed filed before March 27, 2017, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

[22] *See* fn. 20, *supra.*

reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6; *see also Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10ᵗʰ Cir. 2012) (finding that ALJ was required to explain the amount of weight given to other medical source opinion or sufficiently permit reviewer to follow adjudicator's reasoning).  The weight given to this evidence will vary according to the particular facts of the case, the source of the opinion, the source's qualifications, the issues that the opinion is about, and other factors, *i.e.,* how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other facts that tend to support or refute the opinion.  SSR 06-03p, 2006 WL 2329939, at *4-5.[23]

> **C.**   **The ALJ Failed To Apply the Correct Legal Standards When Evaluating the Treating Source Evidence and Her  Reasons for Rejecting Mr. Staton's Treating Source Opinions Regarding His Ability To Do Work-Related Physical Activities Are Not Supported By Substantial Evidence**

Mr. Staton argues that the RFC finding is contrary to evidence and the law because the ALJ failed to properly evaluate and weigh the medical opinion evidence and the ALJ's reasons for rejecting Mr. Staton's treating physician opinions are not supported by substantial evidence. Doc. 28 at 6-10.  The Court begins by addressing the treating source opinion evidence regarding Mr. Staton's ability to do work-related physical activities.

> **1.**   **PA Colburn**

On August 31, 2011, PA Colburn was the first of Mr. Staton's treating providers to complete an assessment of Mr. Staton's ability to do work-related physical activities.  As an

---

[23] *Id.*

20

other medical source, PA Colburn cannot establish the existence of a medically determinable impairment, but can show the severity of Mr. Staton's impairments and how they affect his ability to function.  PA Colburn's assessment limits Mr. Staton to less than sedentary work.[24]

The ALJ accorded PA Colburn's assessment little weight.  Tr. 984-85.  She explained that PA Colburn failed to indicate whether his assessed limitations of Mr. Staton's ability to do work-related physical activities were permanent, when they began, or were expected to end.  *Id.* The ALJ explained that although PA Colburn referred to radiologic studies to support his assessed limitations, the radiologic studies were "unremarkable or mild."  *Id.*   The ALJ also explained that, while PA Colburn indicated Mr. Staton needed an assistive device for ambulation, Dr. Frederich did not find that a hand-held device for ambulation was medically necessary.  *Id.*  The ALJ further explained that PA Colburn failed to support his assessed limitations with respect to Mr. Staton's ability to reach.  *Id.*  Finally, the ALJ explained that given the degree of limitation PA Colburn assessed, it would be reasonable that he would have referred Mr. Staton to a neurologist, orthopedic surgeon, or pain management specialist, but did not do so.  *Id.*

Mr. Staton argues that the ALJ is not entitled to outright disregard Mr. Staton's back pain and was obligated to consider PA Colburn's opinion in formulating the RFC because it is relevant to show the severity of Mr. Staton's functionality.  Doc. 28 at 17.  Mr. Staton argues that the ALJ failed to discuss or consider PA Colburn's treatment notes, which included objective findings that support his opinion.  *Id.* at 18.  Mr. Staton argues that there is no requirement that a

---

[24] Sedentary work involves lifting no more than 10 pounds at a time.  Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally.  Periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  20 C.F.R. §§ 404.1567(a) and 416.967(a); SSR 83-10, 1983 WL 31251, at *5.

treating provider state when a claimant's limitations began or how long they are expected to last. *Id.* Last, Mr. Staton argues that the ALJ's explanation that PA Colburn's opined limitations warranted referring Mr. Staton for specialized care amounts to improper speculation. *Id.* at 18-19.

The Commissioner contends the ALJ provided reasonable and valid reasons for rejecting PA Colburn's opinion and that Mr. Staton is asking this Court to reweigh the evidence.   Doc. 30 at 16-17.

The Court finds that the ALJ failed to apply the correct legal standards and that her explanations for rejecting PA Colburn's opinion are not supported by substantial evidence.  To begin, it is undisputed that the various x-ray and MRI studies PA Colburn obtained and reviewed during his treatment of Mr. Staton demonstrated both positive and negative findings.  That said, PA Colburn was fully aware of the "mild" and/or "unremarkable" findings the ALJ cites as they formed part of the medical record on which PA Colburn based his medical opinion.  As such, the ALJ was not presented here with a situation where the weight of PA Colburn's opinion should be reduced because he lacked relevant information when reaching his opinion.  Further, it is the task of the treating physician, not the ALJ, to reach medical conclusions based on the medical record, which, in this case, included both positive and negative imaging studies.  Thus, while the ALJ might disagree with PA Colburn's interpretation of and reliance on the imaging studies in forming his medical opinion, she is not free to disregard his opinion in favor of her own lay opinion regarding the evidence's significance.  *See generally Langley*, 373 F.3d at 1121 ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments,

speculation or lay opinion.") (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).[25]  To that end, the ALJ similarly relied on her lay opinion that PA Colburn's diagnoses related to Mr. Staton's cervical, thoracic and lumbosacral pain were insufficient to support PA Colburn's reaching and handling limitations[26] and that PA Colburn's opined limitations, if legitimate, warranted referrals for specialized care.  This is error.  Moreover, PA Colburn relied not only on the various imaging studies, but also on his documented positive findings from four separate physical exams conducted during the previous ten months  - physical findings the ALJ failed to address when weighing PA Colburn's opinion.  This is also error.  *See Clifton,* 79 F.3d at 1009 (in addition to discussing evidence supporting her decision, the ALJ also must discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence he rejects); *see also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)) (an ALJ may not engage in improper picking and choosing from the medical reports and use portions favorable to her position while ignoring other evidence).  As for the ALJ's other explanations, the relevant factors the ALJ is required to consider when weighing other medical source evidence do not require the declaration of a specific commencement date and/or the projection of an end date of a claimant's impairments,[27] and whether Mr. Staton did not require the use of a cane for ambulation in

---

[25] Here, all of Mr. Staton's treating sources similarly opined regarding his ability to do work-related physical activities. The ALJ nonetheless relied on the nonexamining State agency medical consultants.  Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

[26] *See* fn. 8, *supra*.

[27] *See* fn. 3, *supra*.

2016,[28] five years after PA Colburn indicated he did in 2011,[29] is an insufficient basis to completely reject PA Colburn's opinion.

## 2.    Dr. Rehman

On February 6, 2013, Dr. Rehman prepared an assessment regarding Mr. Staton's ability to do work-related physical activities.  His assessment, like PA Colburn's, limited Mr. Staton to less than sedentary work.  The ALJ nonetheless rejected Dr. Rehman's assessment explaining that the limitations were based on Mr. Staton's subjective complaints and/or that Dr. Rehman reasons were nonspecific, *i.e.,* "medical condition" and "severe chronic back pain"; that Dr. Rehman's assessed limitations were given only pending further work up; and that Dr. Rehman noted at a subsequent visit that Mr. Staton was not using a cane.  Tr. 986.

Mr. Staton argues that the ALJ improperly rejected Dr. Rehman's opinion.  Doc. 28 at 6-10.  Mr. Staton argues that the ALJ failed to discuss and weigh Dr. Rehman's opinion using the relevant regulatory factors and instead regurgitated her interpretation of the medical evidence stating Dr. Rehman's limitations were based upon subjective reports.  *Id.*  Mr. Staton further argues that the ALJ impermissibly cherrypicked the evidence.  *Id.*  The Commissioner disagrees and contends that the ALJ reasonably rejected Dr. Rehman's opinion because it was not

---

[28] On *July 14, 2016*, five years after PA Colburn made his assessment, Dr. Frederich opined on Mr. Staton's ability to do work-related physical activities.  Tr. 945-48.  Under the category "Are STANDING and/or WALKING affected by the impairment[,]" Dr. Frederich indicated "Yes," and checked the box that Mr. Staton could stand and/or walk "[l]ess than 2 hours in an 8-hour workday. . . ." Tr. 945.  Dr. Frederich did not check the box that Mr. Staton medically required a hand-held assistive device for ambulation.  *Id.*

[29] During or around the time PA Colburn made his assessment, other healthcare providers indicated that Mr. Staton was using a cane for ambulation.  On July 12, 2011, Dr. Caroe indicated that Mr. Staton was using a cane for ambulation.  Tr. 468-71; *see* fn. 8, *supra*.  Similarly on August 14, 2012, Dr. Davis indicated that Mr. Staton was ambulating with a cane.  Tr. 596; *see* fn. 11, *supra*.  Finally, on January 31, 2013, Dr. Rehman indicated that Mr. Staton ambulated using a cane.  Tr. 602.  The ALJ failed to discuss this evidence when she rejected PA Colburn's opinion that Mr. Staton required the use of a hand-held device for ambulation.  *Clifton*, 79 F.3d at 1009.

well-supported by his few, scant records, and because Dr. Rehman admittedly based his opinion in part on Mr. Staton's subjective complaints.  Doc. 30 at 14-16.

The Court agrees that the ALJ failed to take into account certain relevant regulatory factors in weighing Dr. Rehman's opinion and improperly mischaracterized his findings.  For instance, Dr. Rehman was a neurologist who examined Mr. Staton.  *See* 20 C.F.R. §§ 404.1527(c)(1) and (5) and 416.927(c)(1) and (5) (explaining that generally more weight is given to medical opinions of a source who has examined a claimant and of a specialist who opines about medical issues related to his or her area of specialty).  Additionally, Dr. Rehman's assessed limitations were largely consistent with PA Colburn's.  *See* 20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4) (explaining that generally more weight is given to medical opinions that are consistent with the record as a whole).  As for the ALJ's explanations, the ALJ explains that Dr. Rehman's opinion was given "only pending further work up of his complaints"; however, this is pure speculation as there is nothing in Dr. Rehman's assessment indicating that it was conditioned upon the outcome of additional workup.[30]  The ALJ also explains that Dr. Rehman did not give a definitive diagnosis, yet Dr. Rehman's treatment notes provide definitive diagnoses of abnormal involuntary movements, lumbago, and pain in limb.  Tr. 602, 606.  Last, the ALJ explained that Dr. Rehman indicated at Mr. Staton's second visit that Mr. Staton was not using a cane.  However, Dr. Rehman did not indicate that Mr. Staton required the use of a cane in his assessment of Mr. Staton's ability to do work-related physical activities.  As such, it is unclear how the ALJ's explanation undermines Dr. Rehman's opinion.

---

[30] The additional workup to which Dr. Rehman referred, *i.e.,* a Brain MRI and nerve conduction study, was related to Mr. Staton's hand tremors and reported tingling and numbness in his legs.  As such, it is not clear to the Court how the ALJ concluded the absence of these workups would undermine Dr. Rehman's assessment based on Mr. Staton's severe chronic back pain.

3.      **Dr. Frederich**

On July 14, 2016, Dr. Frederich prepared an assessment regarding Mr. Staton's ability to do work-related physical activities.  His assessment, like PA Colburn's and Dr. Rehman's, limited Mr. Staton to less than sedentary work.  The ALJ, however, rejected Dr. Frederich's assessment explaining that *all* of Dr. Frederich's limitations were based on the finding of positive SLR tests which were not consistently present, and that many of his treatment notes found no musculoskeletal or neurological abnormality other than tenderness of the lower spine. Tr. 986-87.  The ALJ also explained that certain treatment notes indicated Mr. Staton was in no acute distress, appeared healthy, did not require the use of a cane, and that his pain was well controlled with Oxycodone.  *Id.*

Mr. Staton argues that Dr. Frederich's assessment is supported by consistent objective and subjective findings found throughout Dr. Frederich's treatment notes which the ALJ chose to ignore.  Doc. 28 at 11-12.  Mr. Staton further argues the ALJ failed to apply the relevant regulatory factors when weighing Dr. Frederich's opinion and properly account for the long treating history he had with Mr. Staton.  *Id.*  Mr. Staton also argues that the ALJ failed to consider the myriad of tests, procedures, referrals and medication trials Dr. Frederich employed to help Mr. Staton find relief.  *Id.*  The Commissioner contends that the ALJ properly rejected Dr. Frederich's opinion because it lacked support and consistency with his "comparatively less extreme treatment records."  Doc. 20 at 13-14.  The Commissioner contends that Dr. Frederich's treatment notes repeatedly described Mr. Staton's symptoms as controlled and recorded few abnormal findings.  *Id.*  The Commissioner contends that Mr. Staton "nitpicks a few of the ALJ's statements, points to other evidence, and presents an alternative interpretation of the evidence" all of which merely seeks an improper reweighing of the evidence.  *Id.*

It is undisputed that Dr. Frederich is a treating physician.  Therefore, the ALJ was required to evaluate his opinions pursuant to the two-part treating physician inquiry.  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  First, the ALJ must determine whether the treating physician's opinions are entitled to controlling weight.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Here, the ALJ "rejected" Dr. Frederich's opinion and so clearly did not give it controlling weight.  See *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (finding that reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling weight").

Second, if the treating physician's opinion is inconsistent with the record or not supported by medical evidence, the opinion does not merit controlling weight but still must be weighed using the relevant regulatory factors.[31]  Additionally, even if a treating source opinion is not entitled to controlling weight, it is still entitled to deference.  *See* SSR 96-2p, 1996 WL 374188 at *4.

The Court agrees that the ALJ avoided the relevant regulatory factors favorable to Mr. Staton in weighing Dr. Frederich's opinion and that the ALJ failed to provide sufficient reasons supported by substantial evidence for rejecting Dr. Frederich's opinion.  Here, Dr. Frederich was Mr. Staton's primary care provider and treated Mr. Staton over the course of five years, seeing him on forty-six occasions.  *See* 20 C.F.R. §§ 404.1527(c)(1)-(4) and 416.927(c)(1)-(4) (explaining that generally more weight is given to medical opinions of a source who has examined a claimant, is a treating source, has seen a claimant long enough to have obtained a longitudinal picture of impairment, and has knowledge as a treating source about the alleged impairments).   Additionally, Dr. Frederich's assessed limitations were largely consistent

---

[31] *See* fn. 17, *supra*.

with PA Colburn's and Dr. Rehman's.  *See* 20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4) (explaining that generally more weight is given to medical opinions that are consistent with the record as a whole).  As for the ALJ's explanations, the ALJ explained that *all* of Dr Frederich's limitations were based on positive SLR tests and that this finding was not consistently present in Dr. Frederich's treatment notes, and that Dr. Frederich consistently found no musculoskeletal or neurological abnormalities, other than tenderness, from January 15, 2013, through May 6, 2016. Tr. 986.  The Court, however, reviewed the thirty-two treatment notes the ALJ cited in support of her explanation and found that *only two* of the thirty-two treatment notes indicate Dr. Frederich evaluated Mr. Staton's musculoskeletal and neurologic status on physical exam.[32]  Tr. 793, 1258. The other thirty notes are silent with respect to musculoskeletal or neurologic exams.  Tr. 580-83, 781-82, 786-863, 950-51, 1260-63, 1246-48.  In other words, the ALJ relied on the absence of contraindication in the medical record, which the Tenth Circuit has made clear is not evidence.  *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (explaining that an RFC findings must be supported by substantial evidence and that the absence of evidence in the medical record is not evidence).  The ALJ also explains that certain of Dr. Frederich's notes indicated that Mr. Staton was in no acute distress, appeared healthy, did not require the use of a cane, and that his pain was well-controlled.  This explanation, however, amounts to the ALJ's parsing through the record in search of favorable findings while ignoring evidence to the contrary.  This is error.  *See Clifton,* 79 F.3d at 1009; *Hardman,* 362 F.3d at 681.  Further, the

---

[32] On September 15, 2015, Mr. Staton presented for an adult physical and Dr. Frederich indicated on physical exam, *inter alia*, that overall findings of Mr. Staton's general/bilateral musculoskeletal system was normal and that Mr. Staton was oriented to time, place, and person and his gait and stance were normal.  Tr. 793.  On November 11, 2016, Mr. Staton presented for an adult physical and Dr. Frederich indicated on physical exam that overall findings of Mr. Staton's general/bilateral musculoskeletal system were normal and that Mr. Staton was oriented to time, place, and person and his gait and stance were normal.  Tr. 1258.

ALJ's explanation assumes that Mr. Staton's pain being well-controlled on medication equates to an absence of pain, which Dr. Frederich's treatment notes do not support.

### 4.    Dr. Gelinas and Dr. Nickerson

The ALJ accorded significant weight to Dr. Gelinas's and Dr. Nickerson's assessments of Mr. Staton's ability to do work-related physical activities.  Tr. 990.  She explained that the medical records and other evidence received after their determinations did not establish significant erosion of Mr. Staton's capabilities.  *Id.*  Dr. Gelinas, however, made his assessment, which Dr. Nickerson subsequently affirmed, *before* all three of Mr. Staton's treating sources completed their assessments of his ability to do work-related physical activities.  *See generally Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (noting the significance of a recent physician's examination which found more limitations than an examination by another physician two years prior).  Moreover, the ALJ's explanation for according their opinions significant weight, *i.e.,* that "the medical records and other evidence received after their determinations do not establish significant erosion of the claimant's capabilities," is undermined by Mr. Staton's treating source medical opinion evidence and, therefore, not supported by the record.

In sum the ALJ failed to apply the correct legal standards in evaluating the treating source medical opinion evidence and failed to provide explanations for rejecting their opinions that were supported by substantial evidence.  This case, therefore, requires remand.

### D.    Immediate Award of Benefits

Mr. Staton asks that his case be remanded for an immediate award of benefits.  Doc. 28 at 27.  He argues that his case has been pending for over eleven years and the Social Security Administration has been given several opportunities to assess the evidence properly and has failed to do so.  *Id.*  The Commissioner contends that the requisite conditions for an immediate

award of benefits are not met here, *i.e.,* that resolving Mr. Staton's concerns as to the ALJ's evaluations of his subjective complaints and medical opinions would require further fact-finding as to the conflicting evidence and that the record as a whole does not contain substantial and uncontradicted evidence indicating that Mr. Staton is disabled.  Doc. 30 at 23-24.

District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.' " *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citation omitted) (quoting *Harris v. Sec'y of Health & Human Servs.,* 821 F.2d 541, 545 (10th Cir. 1987) (remanding for an immediate award of benefits where, *inter alia*, the application had been pending for more than five years)). When the Commissioner has failed to satisfy her burden of proof at step five, and when there has been a long delay as a result of her erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[ ] and the long delay [of at least four years] that has already occurred as a result of the Secretary's erroneous disposition of the proceedings").  The Commissioner "is not entitled to adjudicate a case *ad infinitum* until she correctly applies the proper legal standard and gathers evidence to support her conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

Mr. Staton filed his applications on May 23, 2011, over eleven years ago.  There have already been three administrative hearings and three decisions by ALJs.  In each instance,

Mr. Staton met his burden to show disability at the first four steps of the five-step sequential analysis.  Additionally, this case has already been remanded twice for further administrative proceedings based on the ALJ's failure to apply the correct legal standards in evaluating Mr. Staton's treating source opinion evidence.  Despite these remands, the Commissioner, for the third time, has failed to meet her burden at step five by failing to apply the correct legal standards in evaluating the medical opinion evidence and failing to provide adequate reasons supported by substantial evidence for rejecting Mr. Staton's treating source medical opinion evidence.

That said, Dr. Frederich's assessment was rendered *after* Mr. Staton's date of last insured and it is not clear to the Court whether his assessed limitations apply to the period of time before Mr. Staton's last date of insured.  For this reason, the Court declines to award immediate benefits and will remand for additional proceedings consistent with this Order.

### E.      Remaining Issues

The Court will not address Mr. Staton's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV.  Conclusion

Mr. Staton's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, With Supporting Memorandum (Doc. 28) is **GRANTED.**   The Commissioner's final decision is reversed and this case is remanded for additional proceedings.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**

31